2008 VT 57

## Dale WELLS, Judith Wells, Charles R. Aimi, Alice R. Aimi and Joanne Davis v. Marlynn G. ROULEAU

[955 A.2d 518]

No. 06-498

¶ 1. May 1, 2008. Defendant Marlynn Rouleau appeals the superior court's order concluding that three neighbors, the Wellses, the Aimis, and Joanne Davis (neighbors), established a prescriptive easement across her property. Rouleau argues that the trial court erroneously: (1) relied on incomplete, unsupported, and contradictory findings; (2) admitted unauthenticated hearsay; (3) found two prescriptive time periods; (4) declined to conclude that one neighbor's joint ownership of all three properties resulted in merger and dissolved any acquired easement; (5) concluded that, when the Davises acquired their land, this additional easement did not additionally burden Rouleau's land; (6) granted neighbors an unlimited easement, even though their prescriptive use was seasonal; and (7) issued a judgment order that contradicts the findings and conclusions. We affirm.

---

¶ 2. The following facts are uncontroverted. The parties own four separate parcels of land in Cabot, bordered on the east by Joe's Pond and on the west by West Shore Road. There is a private horseshoe-shaped driveway that runs east from West Shore Road onto Rouleau's land. The driveway then passes across all of neighbors' properties, proceeding south and then west to join West Shore Road again. Rouleau contends that neighbors have no legal right to drive across the northern portion of the driveway that runs across her land. Neighbors claim that they have acquired an unlimited easement across the northern part of the driveway through prescription.

¶ 3. Each party's chain of title begins with a single person, Bartlett, who in 1946 owned the parcels currently possessed by Rouleau and neighbors. In 1947, Bartlett deeded parcels to neighbors' predecessors-in-interest. None of the deeds contained a right-of-way across the northern part of the driveway, although Bartlett reserved an easement for himself across the portion of the driveway crossing neighbors' land. Rouleau's predecessors-in-interest obtained title from Bartlett in 1953.

¶ 4. The court found the following concerning neighbors' historic use of the driveway. By 1956, the horseshoe drive now in place was complete, and all parties or their predecessors-in-interest began to use it. For example, one current neighbor, Charles Aimi, began using the entire driveway after his father bought his property in 1956, and has used it continuously ever since. Charles Aimi also has performed maintenance on the driveway. Many of the Aimis' friends have used the entire driveway.

¶ 5. In the summer of 1975 and again in September 1976, Rouleau's immediate predecessor-in-interest put a chain across the horseshoe drive for a couple of days. Neighbors' predecessors-in-interest were upset, and in November 1976, they — Felice Aimi and Wendell Emslie — filed a lawsuit seeking to establish by prescription a right-of-way across the northern part of the driveway.

¶ 6. While the lawsuit was still ongoing, in 1977, Rouleau and her husband purchased the property. Felice Aimi had since purchased the Emslie property and thus owned all three parcels now owned by neighbors. Around the time the Rouleaus purchased the property, Felice Aimi asked if they would sign a document acknowledging his legal right to use the northern part of the driveway. The Rouleaus refused to sign. Although Rouleau testified at trial that she granted Felice Aimi oral permission to use the driveway, the court did not find this testimony credible. In June 1978, Felice Aimi agreed to the dismissal of the lawsuit without prejudice. All subsequent deeds transferring neighbors' parcels contained a clause granting a right to use the entire horseshoe driveway.

¶ 7. Neighbors continued to use the full driveway, without permission and without protest, until 2004, when Rouleau decided to build a new camp on her property. Because the proposed new building would block the driveway, Rouleau informed neighbors that they no longer had permission to use the driveway. To protect their interest in the driveway, neighbors filed suit in November 2004. The court held a three-day bench trial. From the bench, the court issued oral findings of fact and conclusions of law. The court concluded that neighbors had established a prescriptive easement across the northern part of the driveway. The court also found that neighbors' predecessors-in-interest openly and notoriously used the driveway beginning in 1956 and did so continuously for twenty years. The court held that this use was adverse, because they had neither asked for nor received permission. Thus, the court held that, by 1976, the owners of all three parcels had perfected a prescriptive claim to use the

driveway. The court held that the right was not limited to certain times of the year, even though the use was primarily seasonal. In addition, the court concluded that a second period of prescriptive use elapsed between 1978 and before Rouleau blocked the driveway in 2004 in which all neighbors made full use of the driveway without permission from Rouleau. Rouleau appealed.

¶ 8. To successfully claim an easement through prescription, there must be open, notorious, continuous and hostile use of a right-of-way for fifteen years. *Guibord v. Scholtz*, 2006 VT 22, ¶ 5, 179 Vt. 623, 895 A.2d 202 (mem.); see 12 V.S.A. § 501 (establishing statutory time period of fifteen years). "The general rule is that open and notorious use will be presumed to be adverse and under claim of right, unless there is found an exception which rebuts that presumption, such as evidence of permission of the owner of the land to use the right-of-way." *Buttolph v. Erikkson*, 160 Vt. 618, 618, 648 A.2d 824, 825 (1993) (mem.). On appeal, Rouleau essentially argues that neighbors failed to establish that their use of the driveway was hostile, because neighbors had permission to use the driveway during all relevant periods.

¶ 9. Rouleau first contends that several of the court's findings are without evidentiary support. Specifically, Rouleau argues that the court erroneously found that: (1) Rouleau and her husband received a title opinion, giving them notice of the ongoing lawsuit prior to purchasing the property; (2) neighbors or their predecessors-in-interest spoke with the Rouleaus several times between 1976 and 1978 about signing a deeded right-of-way but that Rouleau did not grant them permission to use the driveway; (3) Rouleau's testimony that she gave neighbor Aimi and neighbor Davis verbal permission to use the driveway in 1978 and 1979, respectively, was not credible; and (4) the 1978 dismissal of the lawsuit did not create an inference as to whether the right was permissive.

¶ 10. Fundamentally, Rouleau asks us to reweigh the evidence on appeal, and we decline to do so. We review the trial court's findings for clear error and will affirm unless "viewing the evidence in the light most favorable to the prevailing party, there is no credible evidence to support the findings." *Guibord*, 2006 VT 22, ¶ 4 (citation omitted).

¶ 11. The court found that Rouleau and her husband had notice of the claim of an easement by prescription when they purchased the property. This finding is based in part on evidence that, in the approximately six weeks between the time Rouleau started occupying her property (by special permission of the previous owner) and the date on which title passed, the other summer residents used the northern part of the driveway. The finding was also based in part on Rouleau's testimony that she knew that there was a lawsuit pending prior to the sale and had observed at the time of the sale that the previous owner had barred access to the northern part of the driveway with a chain and a parked car. Because this evidence supports the court's finding that Rouleau had notice of the lawsuit at the time of purchase, any error as to its conclusion regarding the title opinion was harmless.

¶ 12. Concerning the conversations between Rouleau and neighbors or their predecessors-in-interest, the court did not find to be credible Rouleau's testimony that she granted permission to neighbors or their predecessors-in-interest to use the northern part of the driveway. The trial court is in the best position to determine the credibility of witnesses, and therefore we will not overturn the court's decision simply because there was conflicting evidence. *Id.* ¶ 6.

¶ 13. Finally, as to the dismissal of the lawsuit, the court found that it did not create an inference as to whether a right had been established. Instead, the court focused on "the behavior of both parties

in the circumstances surrounding the dismissal." The court's findings were credible, and "we will not overturn the court's findings based on the presence or weight of contrary evidence." *Id.* ¶ 8.

¶ 14. We next address Rouleau's second argument that the court erroneously admitted unauthenticated hearsay evidence. According to Rouleau, the sole evidence as to whether the pre-1976 use of the driveway by neighbors' predecessors-in-interest was adverse or permissive was a letter authored by Wendell Emslie to Felice and Barb Aimi around the time of the 1976 lawsuit. Neighbors sought to introduce the letter to demonstrate that the use prior to 1976 was hostile and not by permission. The trial court admitted the letter over Rouleau's objection that the letter was unauthenticated hearsay. The trial court concluded that the letter was properly authenticated by neighbor Charles Aimi's testimony that he recognized it as one he had seen and discussed with Felice Aimi, his father, prior to the filing of the 1976 lawsuit. The court also concluded that the letter was admissible under three exceptions to the hearsay rule: (1) as an ancient document under V.R.E. 803(16); (2) as reputation evidence concerning boundaries under V.R.E. 803(20); and (3) as personal or family history concerning boundaries of land under V.R.E. 804(b)(4)(C). On appeal, Rouleau contends that there was no basis to admit the letter because no witness could authenticate the handwriting or the origin of the letter.

¶ 15. We note that the trial court has broad discretion to decide whether to admit or exclude evidence. *Boehm v Willis*, 2006 VT 101, ¶ 12, 180 Vt. 615, 910 A.2d 908 (mem.). We conclude that the court did not abuse its discretion in admitting the letter. As an exception to hearsay, Rule 803(16) allows admission of "[s]tatements in a document in existence 20 years or more whose authenticity is established." The letter was over twenty

years old and was authenticated by the son of the letter's recipient, and thus was properly admissible as an ancient document. Furthermore, we conclude that any error in the admission of the letter was harmless; the trial court did not specifically rely on the letter in its findings, and the letter was cumulative of other evidence that neighbors and their friends made full use of the driveway under claim of right prior to 1976. For example, Charles Aimi testified that he began using the full length of the driveway beginning in 1956, and that he never received permission for such use.

¶ 16. Third, Rouleau contends that the trial court erroneously concluded that there were two prescription periods. Rouleau argues that as to the second period of prescription, from 1978 to 1993, neighbors failed to demonstrate that Rouleau repudiated permission following Rouleau's removal of the chain barrier and neighbors' dismissal of the lawsuit. We find no merit to this argument, as it misconstrues the court's findings. Neighbors did not have to show that Rouleau repudiated permission, because the trial court did not find that Rouleau had ever granted neighbors permission. That Rouleau removed the barrier across the road or that neighbors dismissed their lawsuit is not conclusive evidence that neighbors thereafter used the road with Rouleau's permission, and the court did not so find.

¶ 17. Rouleau's argument also misconstrues the relevant legal analysis. Rouleau relies on *Begin v. Barone*, 124 Vt. 421, 423, 207 A.2d 252, 254 (1965), for the proposition that open and notorious use is presumptively permissive. In fact, just the opposite is true; *Begin* recites an exception to the general rule that open and notorious use is presumed to be adverse. *Id.* ("It is an exception to the general rule that open and notorious use will be presumed adverse [that a] generalized use by the public may, in appropri-

ate circumstances, raise a presumption that the use is permissive."); see also *Buttolph*, 160 Vt. at 618, 648 A.2d at 825 ("The general rule is that open and notorious use will be presumed to be adverse and under a claim of right, unless there is found an exception which rebuts that presumption, such as evidence of permission of the owner of the land to use the right-of-way."). Neither party argues that the driveway was used by the public at large. Rather, the evidence showed that only neighbors, their predecessors-in-interest, and their friends used the driveway.

¶ 18. Fourth, Rouleau argues that, if an easement was established, it was extinguished by merger in 1977, when Felice Aimi received title to all three of neighbors' properties. We find no merit to this claim. Merger extinguishes an easement when the servient and dominant estates are joined in unity of ownership and possession. *Capital Candy Co. v. Savard*, 135 Vt. 14, 15-16, 369 A.2d 1363, 1365 (1976). Merger is totally inapplicable in this case, because although the dominant estates were all owned by the same person, there was no unity of ownership or possession of the servient and dominant estates.

¶ 19. Fifth, Rouleau urges us to conclude that the Davises do not have an easement, because that parcel did not exist prior to the first prescription period, and when it was conveyed in 1979, it created an impermissible increased burden on Rouleau's estate. We do not address Rouleau's argument, because we conclude that given the court's findings that the Davises openly, continuously, and adversely used the entire driveway from 1979, when they obtained title, to 1994, they properly established a prescriptive easement.

¶ 20. Sixth, Rouleau argues that the court erred in concluding that neighbors' seasonal use of the driveway resulted in an unlimited right-of-way. According to Rouleau, neighbors have used the driveway only during seasonal time periods; thus, the court should have placed a seasonal limitation on the easement. See *Dennis v. French*, 135 Vt. 77, 80, 369 A.2d 1386, 1388 (1977) ("The extent of the presumed right is determined by the user, upon which is founded the presumed grant; the right granted being only co-extensive with the right enjoyed.") (emphasis omitted). We are not persuaded. As the trial court explained, because it is normal to use a camp only during certain seasons, neighbors' seasonal use of the driveway used it to its fullest extent. Furthermore, any such limitation would be irrelevant, as we have decided that an increase from seasonal to full-time use is reasonable and does not materially increase the burden on the servient estate. *Buttolph*, 160 Vt. at 619, 648 A.2d at 825 ("Any increase in defendants' use of the driveway after becoming full-time residents on their property was a reasonable change in usage and is not grounds for now limiting their usage of the driveway.").

¶ 21. Finally, Rouleau argues that the court's judgment order contradicts its findings and conclusions. From the bench, the court granted neighbors judgment and explained that the easement that appears in the neighbors' deeds is "consistent with the claim that was asserted . . . and therefore, defines the easement." In its subsequent judgment order, the court defined the boundary of the easement pursuant to a 2004 survey. Rouleau claims that this is inconsistent with the court's earlier conclusion, because the neighbors' deeds reference a different, earlier survey. We conclude that there is no contradiction between the court's conclusions and its subsequent judgment order. The court's reference to the description of the easement in neighbors' deeds invoked the scope of the easement, not its location. The court's oral conclusions did not specifically address the location of the easement. This is not

unusual, because the location of the easement was not raised as an issue at trial. In its judgment order, the court incorporated the most recent survey to denote the location of the driveway.

*Affirmed.*