Macri et. al. v. Cooke's Letters, Inc., No. 446-9-12 Wmcv (Wesley, J. Mar. 27, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windham Unit** | **Docket No. 446-9-12 Wmcv** |

| | |
|---|---|
| **James N. Macri, Jane D. Macri, and Saxtons Rivers Partners, Inc. d/b/a The Dish on Main. Plaintiffs.** <br><br> **v.** <br><br> **Cooke's Letters, Inc., Defendant.** | |

### Findings, Conclusion, and Judgment

Plaintiffs seek injunctive relief and a declaratory judgment that they have a right to use part of Defendant's paved parking lot as a right of way. Plaintiffs assert they have a prescriptive easement over part of Defendant's parking lot. Defendant counterclaims for trespass and seeks an order excluding Plaintiffs from its property.

The Court held a bench trial on the complaint and counterclaims on February 19, 2014. For Plaintiffs, James Macri was present, represented by Christopher Rundle, Esq. and Amanda Rundle, Esq. For Defendant, Daniel Cooke, a partial owner of Defendant, was present, represented by Kristina Brines, Esq. After the hearing, the Court granted the parties fifteen days to submit supplemental filings. On March 6, 2014, both parties submitted proposed findings of fact and conclusions of law.

Findings of Fact

1.  Defendant, Cooke's Letters, Inc., a for-profit corporation, owns property at 39 Main Street, Saxtons River, Vermont.
2.  Since 1960, Defendant has leased 39 Main Street to the U.S. Post Office, which has used the building as the post office for Saxtons River.
3.  Approximately 500 people use the Saxtons River Post Office. Almost all of the residents of Saxtons River have post-office boxes in the building.
4.  On Defendant's property, adjacent to the post office building, there is a paved parking lot.
5.  Post office employees and customers use the paved parking lot for post office business.
6.  Plaintiffs, James N. Macri and Jane D. Macri, own property at 37 Main Street, Saxtons River, Vermont, consisting of a lot together with a commercial building.
7.  James Macri and Jane Macri own Plaintiff Saxtons River Partners, Inc.
8.  Plaintiffs' property is adjacent to Defendant's property to the east.

9. Adjacent to Plaintiffs' building, on the west side of the building, there is an unpaved driveway, which separates the building from the paved Post Office parking lot, and connects Main St. to an open area behind the building

10. The deeded boundary line between Plaintiffs' and Defendant's properties runs along the western edge of the unpaved driveway.

11. Plaintiffs' unpaved driveway measures 9.51 feet in width between Plaintiffs' building and the property boundary along the Post Office parking lot.

12. Beginning in 1979, Plaintiffs' predecessors operated a hardware business on the property as part of the business operations known as Tenney's Lumber Mill.

13. Tenney's Lumber Mill operated on 37 Main Street from approximately 1979 until approximately 2004.

14. Around the year 1979, a dilapidated fence separated part of the 39 Main Street and 37 Main Street.

15. In the late-1970s or early-1980s, Melvin Tenney, the owner of Tenney's Lumber Mill, asked Urbina Shatney, then the post master of the Saxtons River Post Office, for permission to remove the fence.

16. As recounted by Ms. Shatney during her testimony, she granted Mr. Tenney permission to remove the fence.

17. Ms. Shatney could not recall where specifically the fence was located or how far the fence extended.

18. Ms. Shatney could not recall other specifics of the conversation. She did not remember explicitly granting permission to Mr.Tenney to use the Post Office parking lot for access, or permission allowing the customers of Tenny's Lumber Mill to use it for parking.

19. At least once, Ms. Shatney requested an agent of Tenney's Lumber Mill to cause a truck to be moved that blocked access to the post office. Tenney's Lumber Mill quickly complied with this request.

20. The use by Tenney's Lumber Mill of a portion of the Post Office parking lot to allow access by trucks to the area alongside and behind the hardware store was regular, although it was never the subject of explicit permission.

21. During the combined tenures of postmasters Urbina Shatney (1979-1999) and Patricia Bellows (1999-2007), the post masters made various efforts to maintain the post-office parking lot for post office business during post office hours.

22. The post masters make little effort to stop people parking in the lot at 39 Main Street when the post office is closed, and it has sometimes been used as overflow parking for other activities in the Main Street area during those hours, but no such policy or general public use existed during business hours.

23. Tenney's Lumber Mill used the area behind the building on 37 Main Street for storage and fuel tanks, as well as for deliveries to the hardware store.

24. During the course of Tenney's Lumber Mill's use of the 37 Main Street, it received supply deliveries almost daily.

25. The supply deliveries came multiple times per week. The deliveries were made by box trucks, pickup trucks, flat bed trucks, and tractor trailer trucks. A typical tractor trailer included a cab which measured approximately 8 feet in width, with side mirrors extending another foot on each side, which towed a 48 foot trailer.

26. In maneuvering to the side and around the corner into the area behind the building at 37 Main Street, large delivery vehicles regularly employed as much as 10 feet of the paved parking lot adjacent to the unpaved driveway along the side of the building.

27. In approximately 2004, the owner of Tenney's Lumber Mill sold the property at 37 Main Street.

28. The new owners opened a restaurant on 37 Main Street, called the Golden Egg. The new owners also installed a hood and ventilation system on the building at 37 Main Street. The hood sticks out from the building into the airspace over the unpaved driveway of 37 Main Street.

29. On March 10, 2004, the Town of Rockingham Zoning Board issued the Golden Egg a conditional use permit to make alterations to the building at 37 Main Street. The condition use permit referenced a shared right-of-way between 37 Main Street and 39 Main Street, although there is no such deeded right-of-way.

30. After Plaintiffs took over 37 Main Street and until mid-2013, Plaintiffs used the property to operate a non-profit restaurant called the Dish on Main.

31. In mid-2013, Plaintiffs closed the Dish on Main Street.

32. Plaintiffs currently permit Main Street Arts to use the building at 37 Main Street while Main Street Arts renovates their property.

33. The restaurants known as Golden Egg and Dish on Main received deliveries from food trucks multiple times per week.

34. The delivery trucks included tractor trailer trucks that were at least 8 feet wide and towed 48 foot trailers.

35. The large delivery trucks servicing the restaurants occupied similar portions of the paved Post Office parking lot as was the case during the time 37 Main St was used as a hardware store by Tenney's Lumber Mill.

36. At times, post office employees requested the trucks or patrons of the restaurants move their vehicles so as to not block access to the post office. Sometimes, post office employees would place notices on cars requesting they not park on post office property. Post office employees have also expressed safety concerns with trucks and patrons of 37 Main Street using part of the parking lot at 39 Main Street.

37. Except for post office patrons, the parking lot at 39 Main Street was not regularly used by the general public during business hours.

38. Except for transit for business purposes associated with 37 Main Street, and brief passages by the vehicles of post office patrons who parked closer to the Post Office building, the ten foot wide area at the eastern edge of the parking lot, along the boundary between 37 Main Street and 39 Main Street, was rarely traversed or occupied.

39. The U.S. Post Office Contracts Office raised concerns that Defendant could not provide the Saxtons River Post Office with unobstructed access. Defendant fears losing its lease with the U.S. Post Office.

40. Defendant seeks the right to place jersey barriers at their property line.

41. Plaintiffs wish to continue to use part of Defendant's parking lot as a driveway to allow deliveries.

3

Conclusions of Law

Plaintiffs seek judgment establishing a prescriptive easement for continuing use of the portion of Defendant's parking lot which has been regularly traversed by trucks in connection with the businesses operated on the property at 37 Main St. To claim a prescriptive easement, a party must show open, notorious, continuous, and hostile use of the right of way for a period of fifteen years. *Wells v. Rouleau*, 2008 VT 57, ¶ 8, 184 Vt. 536; *see also* 12 V.S.A. § 501 (indicating the statutory period is fifteen years). Evidence of open and notorious use creates the presumption that it was hostile. *Wells*, 2008 VT 57, ¶ 8. Use by permission, however, rebuts the presumption of hostile use. *Id.* Permission may be granted through implication but removal of a barrier alone is not sufficient to show permission. *Id.*

By their evidence, as set out in the findings, Plaintiffs have satisfied their burden on each of the elements for a prescriptive easement. From 1979 until 2004, Plaintiffs' predecessors, Tenney's Lumber Mill, operated a hardware store at 37 Main Street in Saxtons River. The hardware store received deliveries on a near daily basis. The delivery trucks ranged in size from pickup trucks to tractor trailers. The larger vehicles regularly drove on a portion of the parking lot of 39 Main Street. The regular traffic of the delivery trucks is sufficient to show open and notorious use. The delivery trucks made deliveries to Tenney's Lumber Mill for approximately twenty-five years, exceeding the statutory period. The Golden Egg and the Dish on Main continued to receive similar deliveries with a similar use of the Defendant's paved parking lot. Finally, because it was open and notorious, the use by Plaintiff and its predecessors is presumed hostile. Defendant cannot rebut this presumption. As further addressed below, the Court finds that neither Defendant nor its agents gave Plaintiffs or their predecessors permission for the ongoing use of the portion of the parking lot of 39 Main Street adjacent to the unpaved driveway at 37 Main Street. Therefore, Plaintiffs are entitled to a prescriptive easement over that portion of paved parking lot of 39 Main Street.

In considering the scope of the right of way to which Plaintiffs are entitled, the Court acknowledges varying testimony as to any precise extent to which the paved parking lot of 39 Main Street was used in connection with the business enterprises at 37 Main Street. Such precision is not critical to Plaintiffs claim for a reasonably wide prescriptive easement, consistent with the nature of prior hostile use. *See Cmty. Feed Store v. Northeastern Culver Corp.* 151 Vt. 152, 158 (1989). Credible testimony indicates tractor trailers would stay a few feet away from the building on 37 Main Street in maneuvering alongside and to the rear of the building, and regularly require as much as ten feet of the adjacent area of the Post Office parking lot in the maneuver, or to make the traverse to area behind the building. Thus, the Court will award an easement to Plaintiffs that allows common use together with Defendants, and their licensees, of the ten foot wide portion of the Post Office parking lot immediately adjacent to the unpaved driveway running along the western boundary between Plaintiffs' and Defendant's properties. The easement runs along the eastern edge of Defendant's property at 39 Main Street. Since Plaintiffs' predecessors used this right of way on a near daily basis during the statutory period necessary to establish the prescriptive easement, the Court does not restrict the number or type delivery trucks that may use the right-of-way. *Id.*

4

The Court rejects Defendant's argument that prior use of the parking lot at 39 Main Street was permissive, not hostile, because the property was open to the public. As discussed in the Court's January 10, 2014 order on Defendant's motion for summary judgment, a landowner who opens property to the public for general and unrestricted use is deemed to have given permission that is inconsistent with a particular user's claim of hostile use that occurred without specific permission. *See Greenberg v. Hawden*, 145 Vt. 112, 115 (1984). Such a claim of permission by consent to public use requires proof that the property was open to the general public. *See Cmty. Fed Store, Inc.*, 151 Vt.at 159–60.

In this case, the post office parking lot was not open to the general public. The evidence shows Defendant and the post office sought to keep the property open for post office business. Saxtons River is a small community and much of the village accessed the post office to receive their mail. Nevertheless, the community accessing the post office to receive mail and even occasionally parking in the lot after-hours does not mean the parking lot at 39 Main Street was open to the public. The post masters only sought to allow people on the property for post office business and sometimes requested people leave the area when they blocked accessed to the post office. Thus, there was no general use of the parking lot during business hours, as use was confined to parking by postal patrons at the western end of the lot next to the Post Office building. Nonetheless, the eastern edge of the parking lot was used regularly, and virtually exclusively, for truck traffic associated with the businesses that have occupied 37 Main Street. Under the circumstances described by the findings, the Court must conclude that the parking lot was not open to the general public, and the Court rejects Defendant's argument that Plaintiffs' use was permissive for this reason. *See, Begin v. Barone*, 124 Vt. 421(1965); *see also Greenberg*, 145 Vt. at 115 (particular use by claimant found adverse despite evidence of general use); *accord* Restatement of Property: Servitudes § 2.17, Reporter's Notes, cmt. G.

The Court also rejects Defendant's contention that its agent, former post master Urbina Shatney, gave permission to Plaintiff's predecessors to use the property by allowing the owner of Tenney's Lumber Mill to remove a depilated fence that separated the property. The Court credits the former post master's testimony that she consented to the removal of the depilated fence sometime in the late 1970s or early 1980s. However, she disclaimed any recollection of the contents of the conversation, or where the fence lay, or any of the circumstances prompting the removal. The former post master's testimony was too vague to show a grant of actual or implied permission associated with the regular use of the parking lot by Tenney's Lumber Mill trucks.

Defendant's argument that it is protected from adverse possession under 12 V.S.A. § 462 is similarly unavailing. 12 V.S.A. § 462 protects lands used for public, pious, or charitable uses from being subject to adverse possession or prescriptive easements. The Court analyzed and rejected Defendant's argument in its May 2, 2013 order on Defendant's motion for summary judgment. In that order, the Court determined 12 V.S.A. § 462 does not apply to for profit corporations, even if they lease land to a public entity. Defendant is a for-profit corporation and therefore it is not protected by 12 V.S.A. § 462.

For the reasons discussed above, the evidence demonstrates Plaintiffs are entitled to a prescriptive easement over 10 feet of the paved parking lot of 39 Main Street along its eastern

edge. The Court will enter judgment in favor of Plaintiffs. Judgment for Plaintiff must also enter as to Defendant's counterclaims for declaratory judgment and for trespass.

## Order

**WHEREFORE** it is hereby **ORDERED:** The Court **GRANTS** judgment in favor of Plaintiffs and against Defendant for a prescriptive easement, consisting of right-of-way to be used in common with Defendants and its licensees measuring 10 feet from the eastern edge of the paved parking lot on Defendant's property at 39 Main Street, Saxtons River, Vermont, and running the length of the boundary between the parties' properties. The Court **GRANTS** judgment to Plaintiffs and against Defendant on its counterclaim for a declaratory judgment and on its counterclaim for trespass, which are hereby **DISMISSED.**

Plaintiffs shall submit a proposed Judgment Order within 10 days.

Dated and signed electronically at Newfane, Vermont on March 20, 2014.

_John P. Wesley_

_____
John P. Wesley
Superior Court Judge

6